UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CARLOS CALLE,

                                                   Plaintiff,

            -against-

YONELES ENTERPRISES, INC. d/b/a La
Marina Bar Restaurant, AIDA M. RODRIGUEZ,
JOHN DOE AND JANE DOE #1-10,

                                     Defendants.
----------------------------------------------------------------x

**REPORT AND**
**RECOMMENDATION**

**16-CV-1008 (NGG)**

ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:

In this wage-and-hour action, plaintiff Carlos Calle ("Calle" or "plaintiff") seeks to

recover, *inter alia*, unpaid wages and overtime from his former employers, defendants Yoneles

Enterprises, Inc.,[1] d/b/a La Marina Bar Restaurant, Aida M. Rodriguez ("Rodriguez") and

John and Jane Does 1 through 10 (collectively, "defendants"). See generally Amended

Complaint (Feb. 14, 2017) ("Am. Compl."), DE #18. Currently pending before this Court,

on a referral from the Honorable Nicholas G. Garaufis, is plaintiff's motion for default

judgment. See Motion for Default Judgment (May 23, 2017) ("Pl. Mot."), DE #28; Order

Referring Motion (May 24, 2017).

For the reasons set forth herein, the Court recommends that default judgment be

granted against both named defendants, jointly and severally, in the amount of $56,414.41,

---

[1] According to the New York State Division of Corporations entry submitted to the Court by
plaintiff, see attachment to Letter Motion Request Seeking Leave to Serve Corporate
Defendant (Feb. 6, 2017), Electronic Case Filing Docket Entry ("DE") #16, the proper
spelling of the corporation's name is "Yoneles," not the spelling set forth in plaintiff's
pleading and other filings ("Yoneless"). The Court deems the Amended Complaint to be
amended to reflect the correct spelling of "Yoneles Enterprises, Inc."

representing $48,731.01 in compensatory, liquidated, and statutory damages, and $7,155.00 in attorney's fees and $528.40 in costs.   In addition, the Court recommends awarding prejudgment interest, at the rate of $3.21 per day from January 31, 2015 through the entry of judgment, on $13,016.71 of plaintiff's recommended wage-claim damages, and interest at the daily rate of $3.70 from July 15, 2015 through the entry of judgment, on recommended breach-of-contract damages of $15,000.   The Court further recommends that plaintiff be directed to show good cause for failing to serve the John and Jane Doe defendants within 90 days of the filing of his initial pleading, or else seek voluntary dismissal of the claims against those defendants.

## BACKGROUND

Preliminarily, the Court notes various inconsistences among the allegations in the Amended Complaint, plaintiff's declarations, and testimony and documentary evidence proffered during the evidentiary hearing.   These will be addressed hereinafter in this opinion.

## I.      The Amended Complaint's Allegations

The Amended Complaint alleges that plaintiff worked for defendants at their bar and restaurant, La Marina Bar Restaurant ("La Marina"), from December 17, 2014 to March 12, 2015, initially preparing for its grand reopening and, once it reopened, serving as a chef for three weeks.   See Am. Compl. ¶¶ 20, 21, 30.   Plaintiff worked seven days per week, from seven to thirteen hours per day, for a total of 47 to 100 hours per week.   See id. ¶ 31. Defendant Rodriguez promised to pay plaintiff $100 per work day, but failed to pay him at all. See id. ¶¶ 32, 34.

Plaintiff prepared La Marina for its grand reopening, including renovating the

- 2 -

restaurant space, painting, redesigning the menu and establishing internal procedures.   See id.
¶ 21.   In the course of this work, plaintiff purchased materials, including paint and groceries,
but was never reimbursed by defendants.   See id. ¶ 22.   Specifically, plaintiff alleges that he
spent $660 to create a new menu, $3,000 to renovate defendants' "system," and $675 in
groceries and materials.   See id. ¶ 48.

Plaintiff further alleges that defendant Rodriguez solicited loans from plaintiff to
finance the grand reopening and promised to repay those loans by July 2015, with interest.
See id. ¶ 23.   Plaintiff lent defendants $20,000, split among four payments of $5,000, mostly
by endorsed check made out to plaintiff, and the balance in cash: on January 6, 2015, February
12, 2015, March 1, 2015 and April 2, 2015.   See id. ¶¶ 23, 25-28.   Although Rodriguez
promised several times to repay the loans, she failed to do so.   See id. ¶ 29.

Three weeks after La Marina reopened, Rodriguez told plaintiff that because the re-
opening was not successful, she would return to operating the premises as a bar rather than a
restaurant, for which plaintiff's services as a chef were no longer needed.   See id. ¶ 33.
Plaintiff asked that he be paid for the hours he worked, reimbursed for the materials and
expenses he advanced on behalf of the restaurant, and repaid for the loans he made.   See id.
¶ 34.   Rodriguez refused.   See id.   Plaintiff claims that he is owed wages for unpaid straight
time, unpaid overtime and a spread-of-hours premium for those days in which he worked more
than 10 hours.   See id. ¶¶ 36, 37.   In addition, plaintiff alleges that defendants failed to
provide him with any wage notices or paystubs.   See id. ¶¶ 38, 47, 95.

## II.     Procedural History

### A.     The Initiation of the Case and Defendants' Failure to
Respond to the Complaint

On February 29, 2016, plaintiff filed his original complaint, naming as defendants

Rodriguez, ABC Corporation, d/b/a La Marina Bar Restaurant, and John and Jane Does 1

through 10.  See generally Compl. (Feb. 29, 2016), DE #1.  Following service by personal

delivery on Rodriguez and defendants' failure to timely respond to the complaint,[2] plaintiff

requested that a certificate of default be entered against Rodriguez and the corporate entity, see

Request for Certificate of Default (June 1, 2016), DE #7, and the Clerk of the Court entered a

notation of default the next day, see Clerk's Entry of Default (June 2, 2016), DE #8.  Plaintiff

thereafter moved for a default judgment against Rodriguez and ABC Corporation and Judge

Garaufis referred the motion to the undersigned magistrate judge for report and

recommendation.  See Motion for Default Judgment (Sept. 22, 2016), DE #9; Order Referring

Motion (Sept. 23, 2016).

By order dated January 6, 2017, the Court directed plaintiff to submit supplemental

briefing regarding service on, and the propriety of entering a default judgment against, an

unidentified corporate entity.  See Order (Jan. 6, 2017) at 2, DE #15.  Instead of doing so,

however, on February 6, 2017, plaintiff sought leave to serve the previously unidentified

corporation, the name of which he had recently ascertained.  See Letter Motion Seeking Leave

(Feb. 6, 2017), DE #16.  By electronic order dated February 13, 2017, the Court granted

---

[2] During a telephone conference held on October 28, 2016, counsel for plaintiff advised that he
had been contacted by defendant Rodriguez after this lawsuit was filed.  See Minute Entry
(Oct. 28, 2016), DE #13.

4

plaintiff's request and directed him to file and serve an amended complaint substituting Yoneles Enterprises, Inc. for ABC Corporation.   See Electronic Order (Feb. 13, 2017). Following service of the Amended Complaint on defendants, and their failure to answer or otherwise respond, plaintiff renewed his motion for default judgment, supported by a declaration that largely mirrored but slightly supplemented the allegations contained in the Amended Complaint.   See Declaration of Carlos Calle (May 23, 2017) ("Calle Decl."), DE #28-5.   For example, plaintiff averred that from December 2014 until February 14, 2015, he worked more than ten hours on most days of the week.   See id. ¶ 19.   From February 15, 2015 "until the end of March 2015" -- described elsewhere in the declaration as "March 12, 2015," see id. ¶ 2 -- plaintiff worked at least ten hours per day on fourteen separate occasions. See id. ¶ 19.   For the first time, plaintiff revealed that he took notes as to the hours that he worked, see id. ¶ 20, and submitted his calculation of damages, which assumed that he worked an average of 73.5 hours per week until March 19, 2017, see Damages Calculations (May 23, 2017), DE #28-10.

The Court then directed plaintiff to cure various deficiencies in his submissions, including his failure to support his claim that he was an "employee" of defendant and his use of estimated hours worked despite his assertion that he had documented the actual number of hours worked.   See Order re Motion for Default Judgment (May 24, 2017) at 1-2, DE #29. Plaintiff supplemented his papers, proffering yet another declaration, wherein he described in more detail his interactions with Rodriguez and his employment with defendants.   See [Supplemental] Declaration of Carlos Calle (June 9, 2017) ("Supp. Calle Decl."), DE #32.

- 5 -

Specifically, plaintiff averred in his supplemental declaration that he met with Rodriguez[3] on December 11, 2014 to interview for a job as chef.  See id. ¶ 3.  In the course of the interview, Rodriguez told plaintiff that La Marina was operating as a nighttime bar but that she intended to convert it into a daytime restaurant.  See id. ¶ 4.  Since plaintiff had experience performing renovations, Rodriguez hired him initially to help renovate the bar, and thereafter to work as a chef once it reopened as a restaurant.  See id.  Plaintiff performed the renovations under Rodriguez's supervision.  See id. ¶ 10.  In contrast to the allegations in the Amended Complaint and in parts of plaintiff's initial declaration, plaintiff's supplemental declaration stated that he worked for defendants until March 19, 2015, between seven and *eighteen* hours per day.  Compare id. ¶¶ 6-7 with Am. Compl. ¶¶ 20, 31 (plaintiff worked seven to thirteen hours per day from December 17, 2014 to March 12, 2015) and Calle Decl. ¶¶ 2-3 (same).  Plaintiff also modified the description of his duties, stating that he helped defendants perform renovations from December 17, 2014 until February 10, 2015 and then worked as a chef after the restaurant reopened on February 11, 2015, until his employment ended on March 19, 2015.  See id. ¶ 6.  Plaintiff further clarified that Rodriguez, rather than he, designed the restaurant's menu and implemented the new business administrative system. See id. ¶¶ 11, 12.

Plaintiff also attached copies of four pages of monthly calendars (for December 2014 through March 2015) containing handwritten notes of the hours that plaintiff claims he worked.

---

[3] Throughout this declaration, plaintiff uses the term "Defendants" when referring to the only named individual defendant, Rodriguez.

See Calendars (June 9, 2017), DE #31-1.   He further revised his damages calculations,

applying the number of hours recorded in the calendars, rather than the estimate of 73.5 hours

per week used in his previous submission.   See Damages Calculations (June 9, 2017), DE

#31-2.

     As for his loans to defendants, plaintiff explained that he used the proceeds of a

settlement of a wage-and-hour case he had brought against his previous employer, Lots of

Hands.   See Supp. Calle Decl. ¶ 17.   Each of the four $5,000 loan payments he made to

defendants consisted of plaintiff's endorsement of a settlement check he received from Lots of

Hands, plus cash.   See id. ¶¶ 19-23.

     Upon reviewing plaintiff's supplemental papers, and given the various inconsistencies

in his submissions, the Court scheduled an inquest hearing for July 13, 2017 and directed

plaintiff to bring to the hearing "the original copies of his monthly calendars for the period

from December 2014 through March 2015, reflecting his notations concerning the hours he

claims to have worked during that period; and, for that same period, records relating to any

bank account in his name or in which he had an interest."   Scheduling Order (June 12, 2017)

at 1, DE #33.[4]

**B.**     **The July 13, 2017 Inquest Hearing**

     At the inquest hearing, plaintiff testified that he had been friends with defendant

Rodriguez for approximately five years before he starting working at La Marina.   See

---

[4] Copies of the scheduling order were sent by overnight courier to defendants, who did not
appear at the inquest hearing.   See Minute Entry (July 13, 2017) ("7/13/17 Minute Entry").

Transcript of Civil Cause for Evidentiary Hearing (Aug. 7, 2017) ("Tr.") at 10, DE #40.   In

a conversation during a chance encounter outside a subway station, Rodriguez told plaintiff that

her bar had been closed for several months and she wanted to reopen it as a restaurant.   See

id. at 11-12, 13.   At a subsequent, scheduled meeting, Rodriguez hired plaintiff to perform

renovations and, once those were completed, to cook for the restaurant.   See id. at 15, 16.

They agreed that defendants would pay plaintiff $100 per day until the restaurant became

successful, at which time defendants would increase plaintiff's salary.   See id. at 16, 17; see

also id. at 34.   They did not discuss how many days per week plaintiff was expected to work

nor how many hours per day.   See id. at 17, 46-47.   Plaintiff provided inconsistent testimony

regarding the number of hours he assumed he would be working, noting at various points that

Rodriguez wanted the premises fixed "as fast as possible," id. at 17; see id. at 46, and that he

expected his workdays to extend "not more than ten or twelve hours, nine hours," see id. at

47; he then changed his estimate to "[n]o more than eight hours" per day, see id.

According to plaintiff, consistent with a practice he had followed in connection with his

prior jobs, at the end of each workday, he recorded the hours he worked on a monthly

calendar, which was admitted into evidence.   See Tr. at 6-9, 47; Exs. A1 (2015), A2 (2014);

see also DE #31-1.   These calendars contain plaintiff's handwritten notations listing the times

he started and ended work each day, as well as the number of hours worked in excess of eight

hours, denominated as "extra hours."[5]   See Tr. at 8-9, 47; Exs. A1, A2.   Each day in which

---

[5] The final row on the calendar for February 2015, which is directly below the row for the
week ending February 28, contains crossed-out handwritten notations of hours worked.   See
Ex. A1.   Incredibly, plaintiff testified that the handwritten "Xs" were there before he noted

- 8 -

plaintiff worked more than eight hours is circled on the calendar.   See Exs. A1, A2.

Plaintiff also submitted a summary of hours worked that he compiled after he stopped working for defendants.[6]   See Tr. at 50-51; Ex. F, DE #39-1.   In some respects, this summary is inconsistent with the calendar notations discussed above.   For example, according to the summary, plaintiff worked fifteen days during March 2015, until March 15, 2015.   See Ex. F.   However, the calendar for March 2015 reflects 19 days worked, until March 19, 2015.   See Ex. A1.   Further, the summary calculation for "horas extras" shows fourteen hours for February 2015, whereas the February calendar shows 93 "extra hours."   Compare Ex. A1 with Ex. F.   Despite its misgivings about the reliability of the notations in the monthly calendars, the Court will rely to a large extent on those notations in making its own calculations of damages.

In addition to performing renovations, Rodriguez asked plaintiff to prepare a draft menu for her approval.   See Tr. at 14.   Prior to the restaurant's reopening, plaintiff, at Rodriguez's request, designed a system for operating the restaurant, including identifying suppliers, creating a logo and monitoring sales.   See Tr. at 34-35, 37, 38; Ex. E.   Plaintiff testified that he spent $3,000 of his own funds to create the system, see Tr. at 36, and spent

_____

his hours in that row and that this row pertains to the seven days immediately following February 28.   See Tr. at 48-49.   However, the calendar for March 2015 reflects entirely different notations of hours worked for the week of March 1 through March 7, casting doubt on the reliability of these notations.   The Court disregards those crossed-out notations in its calculations.

[6] At the hearing, plaintiff submitted only a Spanish-language version of the summary. Plaintiff filed an English translation on July 21, 2017.   See DE #39-1 (attached to Letter (July 21, 2017), DE #39).

$660 on printing menus and $675 for supplies and groceries,[7] see Tr. at 38-39; Exs. D-1, D-2.

In addition, plaintiff offered to lend Rodriguez money to finance the renovation of the restaurant, as long as she could repay the loan in six months.   See Tr. at 22.   Plaintiff loaned Rodriguez $20,000 in four installments between January 2015 and April 2015, using settlement funds from an unrelated FLSA litigation.   See id. at 19, 23, 41.   Plaintiff explained that he made contemporaneous notations on the check receipts to reflect the loans he made to Rodriguez.   See Tr. at 21, 25-27, 37; Ex. B.

According to plaintiff's testimony at the hearing, his last day of work for defendant was March 19, 2015.[8]   See Tr. at 9-10, 30.   Based on his testimony, it is not clear whether plaintiff quit or was fired.   On March 19, 2015, Rodriguez informed plaintiff that she no longer required his services.   See id. at 30, 40-41.   However, plaintiff also testified that he quit because he was not getting paid.   See id. at 30, 43.   In fact, prior to his final day of employment, plaintiff had "continuously" asked Rodriguez to repay the loan and pay him the wages that he was owed, but Rodriguez told plaintiff that she did not have any money.   See id. at 30, 31, 40-41.   Under questioning by the Court regarding a claimed $5,000 loan by plaintiff

---

[7] Although the summary plaintiff created states that plaintiff spent $500 in printing costs for menus, see Ex. F, plaintiff testified and submitted a receipt for printing costs in the amount of $660, see Tr. at 39; Ex. D1.

[8] This termination date is consistent with his supplemental declaration, but diverges from the allegations in the Amended Complaint and his earlier-filed declaration (i.e., March 12, 2015). See supra p. 6.   Defendants were nevertheless on notice that plaintiff sought damages for unpaid straight time and overtime wages for the period of his employment.   See Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506 (RLM), 2014 WL 6674583, at *9 & n.8 (E.D.N.Y. Nov. 25, 2014); cf. Fed. R. Civ. P. 54(c) (default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

to Rodriguez on April 2, 2015, plaintiff initially equivocated about his last day of employment, but ultimately confirmed that his last day was March 19, 2015.   See id. at 41-42.

In violation of the Court's scheduling order of June 12, 2017, plaintiff failed to produce his bank records at the inquest.   At the conclusion of the hearing, the Court directed plaintiff's counsel to prepare a subpoena for plaintiff's bank records, see id. at 53, and thereafter so-ordered subpoenas addressed to JP Morgan Chase and Wells Fargo, see Subpoena (July 14, 2017), DE #38.   Both banks advised that they had no responsive records.   See Letter response re: compliance with subpoena request (Aug. 14, 2017), DE #41; Letter from Wells Fargo (Sept. 29, 2017), DE #42.

## DISCUSSION

### I.   Default Judgment Standard

Ordinarily, where, as here, a defendant fails to respond to the complaint and defaults, any well-pleaded factual allegation contained within the complaint, other than those relating to damages, are deemed to be admitted.   See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011).   Nevertheless, a pleading's legal conclusions are not assumed to be true, and, on a motion for a default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief.   See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is

"required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").

Even if liability has been established, the pleading's allegations concerning damages are not deemed to be admitted by the default; instead, the court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff with respect to the quantification of damages. See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (finding that a "court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum [of damages]"). A court may also, in its discretion, conduct a hearing to ascertain the amount of damages to be awarded against a defaulting defendant. See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991). The moving party is entitled to all reasonable inferences from the evidence it offers. See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

## II.   Liability

### A.   The Fair Labor Standards Act – Legal Principles

#### 1.   Employer/Employee Relationship

The Fair Labor Standards Act ("FLSA") mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In addition, section 206 of the FLSA sets forth a minimum hourly wage employers must pay their employees. See id. § 206(a)(1)(c). The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work"). An employee may bring suit against his employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA. Indeed, the regulations promulgated by the United States Department of Labor under the FLSA recognize that there may be joint liability for FLSA violations. See 29 C.F.R. § 791.2 ("A single individual may stand [as an employee] to two or more employers at the same time under the Fair Labor Standards Act . . . ."); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA). In order to determine whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir.

- 13 -

2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961); Rutherford

Food Corp. v. McComb, 331 U.S. 722, 730 (1947)) (internal quotations omitted).

      Although employment relationships under the FLSA are flexible and must be

determined by examining the totality of the circumstances on a case-by-case basis, the Second

Circuit has cited four factors of "formal control" that are pertinent to even the most basic

employer-employee analysis.   See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir.

1984).   These "formal control" factors are "whether the alleged employer (1) had the power to

hire and fire the employees, (2) supervised and controlled employee work schedules or

conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records."   Id. (internal quotations and citations omitted).   Even in the absence of

"formal control," an entity or individual may constitute an "employer" if that party had

"functional control" of the employee.   See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D.

516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on other

grounds, 811 F.3d 528 (2d Cir. 2016).   In accordance with these principles, "a corporate

officer with operational control of a corporation's covered enterprise is an employer along with

the corporation . . . ."   Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch,

J.) (internal quotation and citation omitted).   Consequently, joint employers, including

corporate officers with the "power to control," may be held jointly and severally liable for

FLSA violations.   See id. at 236-37 (citations omitted).

- 14 -

### 2.    Violations of the FLSA

In order to establish liability under the FLSA for failure to pay minimum wage and overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)). Employers that violate either of these provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."   29 U.S.C. § 216(b).   The FLSA contains a two-year statute of limitations for non-willful violations, and, for willful violations, a three-year limitations period from the date that the claim accrued.   See 29 U.S.C. § 255(a).   Willfulness requires a showing that the employer either knowingly violated its obligations under the FLSA or showed reckless disregard for whether its conduct was prohibited by that statute.   See Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 87 (E.D.N.Y. 2012).   Where, as here, the complaint alleges willfulness, and the employer has defaulted, the Court is entitled to find that willfulness has been established.   See id.; Hernandez v. P.K.L. Corp., No. 12-CV-2276 (NG)(RML), 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013).

### B.    New York Labor Law – Legal Principles

The New York Labor Law is quite similar to the FLSA in that it mandates minimum

- 15 -

wage and overtime compensation schemes.   See N.Y. Lab. Law § 650 *et seq.*; Gunawan, 897 F.Supp.2d at 84 ("The NYLL mirrors the FLSA in most but not all respects.").   Indeed, like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."   See Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citations omitted); Sethi v. Narod, 974 F.Supp.2d 162, 188 (E.D.N.Y. 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).

One area in which the NYLL differs from the FLSA is the extent to which an employee may recover unpaid wages:   Under the FLSA, a plaintiff can recover for unpaid "straight time" only up to the minimum wage rate.   See Villar v. Prana Hosp., Inc., No. 14 Civ. 8211 (RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017); see also Hernandez v. NJK Contractors, Inc., No. 09-CV-4812 (RER), 2015 WL 1966355, at *41 (E.D.N.Y. May 1, 2015).   Under the NYLL, however, a plaintiff can recover for unpaid "straight" time at the agreed-upon rate, even if it exceeds the minimum wage.   See id.; Kernes v. Global Structures, LLC, No. 15 Civ. 659 (CM)(DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016). Section 191 of the NYLL mandates that workers "be paid . . . in accordance with the agreed terms of employment . . . ."   N.Y. Lab. Law §§ 191(1)(a)(i), 191(1)(d); see Hernandez, 2015 WL 1966355, at *42; Espinoza v. Indus. Glass & Mirror Inc., No. 16-CV-0064 (ARR)(RER), 2016 WL 7650592, at *5 (E.D.N.Y. Nov. 30, 2016); adopted, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017); Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *4 (E.D.N.Y.

Apr. 1, 2008).[9]

Another distinction between the FLSA and NYLL is the requirement under NYLL regulations that, in circumstances described hereinafter, an employer must pay employees a "spread-of-hours" premium that is equal to one hour of pay at the statutory minimum wage for each day an employee works in excess of ten hours.   See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; id. § 146-1.6(d); see infra pp. 21-22.   In addition, unlike the FLSA, the NYLL, as amended by the Wage Theft Prevention Act ("WTPA"), 2010 N.Y. Laws ch. 564 § 3, requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, . . . ; the regular pay day. . . ; [and] the name of the employer[.]"   See N.Y. Lab. Law § 195(1)(a), 2010 N.Y. Sess. Laws ch. 564 § 3, eff. April 9, 2011 (hereinafter "section 195(1)").   The NYLL, as amended, also requires that employers "furnish each employee with a statement with every payment of wages" listing certain information, including "the dates of work covered by that payment of wages" and the "rate or rates of pay and basis thereof[.]" N.Y. Lab. Law § 195(3), 2010 N.Y. Laws ch. 564 § 3, eff. April 9, 2011 (hereinafter "section 195(3)").

Yet another distinction between the federal and state statutes is the limitations period, which, under the NYLL, is six years.   See N.Y. Lab. Law §§ 198(3), 663(3).   In addition,

---

[9] In addition, section 198(3) provides that employees are entitled to recover all unpaid wages.  See N.Y. Lab. Law § 198(3); Kernes, 2016 WL 880199, at *3; Hernandez, 2015 WL 1966355, at *42.

the NYLL provides greater protection against unlawful deductions from an employee's wages.
See <u>infra</u> p. 23.

### C.    Application of the Law to the Facts

Having set forth the relevant legal standards under the FLSA and the NYLL, the Court
now considers whether the factual allegations asserted in plaintiff's amended pleading, deemed
to be admitted as a result of defendants' default, are sufficient to warrant a finding of liability
against each defendant.   <u>See</u> Fed. R. Civ. P. 8(b)(6); <u>Mickalis Pawn Shop</u>, 645 F.3d at 137.

### 1.    Liability of Yoneles Enterprises and Aida Rodriguez

Plaintiff has sufficiently alleged that Yoneles Enterprises and Aida Rodriguez were his
employers for purposes of the FLSA[10] and the NYLL.   <u>See generally</u> Am. Compl. ¶¶ 8-11,
14, 62-64, 70.   Plaintiff has established that the corporate defendant operated the restaurant
where plaintiff worked.[11]   With respect to Aida Rodriguez, plaintiff's Amended Complaint,
declarations and testimony are consistent in this respect: Aida Rodriguez, alleged to be the
owner and/or officer of Yoneles Enterprises, controlled the terms and conditions of plaintiff's

---

[10] Plaintiff brings his FLSA claims pursuant to a theory of "enterprise" coverage.   <u>See</u> Am.
Compl. ¶ 62 (defendants are "engaged in interstate 'commerce' and/or in the production of
'goods' for 'commerce'"); <u>id.</u> ¶ 64 (defendants had "gross revenues in excess of $500,000").
In the context of a motion for default judgment, plaintiff's conclusory but uncontested
allegations satisfy the interstate commerce requirement.   <u>See</u> <u>Vilchis v. Seoul Sisters, Inc.</u>,
No. 15-cv-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), <u>adopted</u>,
2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93
F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).

[11] The website of the New York State Division of Corporations lists defendant Yoneles
Enterprises, Inc. at the address for La Marina.   <u>See</u>
https://www.dos.ny.gov/corps/bus_entity_search.html.

employment.[12]   See id. ¶¶ 10-11; Supp. Calle Decl. ¶¶ 10-13, 16; Tr. at 11, 13-17.   Despite

receiving notice of this lawsuit and the inquest, Rodriguez failed to respond to plaintiff's

allegations or to appear at the hearing.   The allegations contained in the Amended Complaint

are sufficient to find that Yoneles Enterprises and Aida Rodriguez were plaintiff's "employers"

under the FLSA and the NYLL.   See, e.g., Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132,

139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the

power to control the workers in question with an eye to the 'economic reality' presented by the

facts of each case."); Peralta v. M&O Iron Works, Inc., No. 12-CV-3179 (ARR)(RLM), 2014

WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

### 2.    Liability of John and Jane Does

Since plaintiff failed to identify or serve the individual Doe defendants, the Court

recommends denying default judgment against them.   See Asfaw v. BBQ Chicken Don Alex

No. 1 Corp., No. 14-CV-5665 (CBA)(RML), 2016 WL 1276417, at *3 (E.D.N.Y. Mar. 30,

2016).   Plaintiff should be directed to show good cause for failing to serve the John and Jane

Doe defendants within 90 days of the filing of his initial pleading, or else seek voluntary

dismissal of the claims against those defendants.   See id. at *4 (citing Thompson v.

---

[12] The websites of several state agencies reflect that Aida Rodriguez, with the address of La
Marina, was the principal and/or registered agent of a now defunct corporation: The website of
the New York State Liquor Authority lists Aida Rodriguez as a principal of La Marina
Restaurant Corp., the liquor license of which expired on June 20, 2014, prior to the
commencement of plaintiff's employment.   See https://www.tran.sla.ny.gov.   Likewise,
Rodriguez is listed with the New York State Division of Corporations as the registered agent of
La Marina Restaurant Corp., which was dissolved by proclamation on October 28, 2009.   See
https://www.dos.ny.gov/corps/bus_entity_search.html.

Maldonado, 309 F.3d 107, 110 (2d Cir. 2002) ("notice to the plaintiff must be given prior to a *sua sponte* dismissal" under Fed. R. Civ. P. 4(m))).

### 3.    Minimum Wage

Plaintiff alleges that defendants failed to pay him at all for the work he performed.   See Am. Compl. ¶ 34.   Both the FLSA and the NYLL require that employees be paid a minimum hourly rate.   See 29 U.S.C. § 206(a)(1); N.Y. Labor Law § 652.   Plaintiff sufficiently states claims for failure to pay the minimum wage under the FLSA and the NYLL.   See Am. Compl. ¶¶ 66, 68, 72.

### 4.    Agreed-Upon Wage

In addition to his minimum wage claims, plaintiff further alleges that defendants failed to pay him the agreed-upon wage in violation of the NYLL.   See Am. Compl. ¶¶ 102-05; see also *supra* pp. 2, 10.   Plaintiff has sufficiently alleged a failure to pay his agreed-upon wage under the NYLL.

### 5.    Overtime

The Amended Complaint alleges that plaintiff regularly worked in excess of forty hours each week[13] and that defendants did not pay plaintiff the requisite premium for those overtime hours.   See Am. Compl. ¶¶ 31, 36, 42, 77, 80.   Plaintiff has sufficiently alleged claims against defendants for unpaid overtime under the FLSA and the NYLL.

---

[13] The Amended Complaint alleges that plaintiff worked between 47 and 100 hours per week. See Am. Compl. ¶ 31.

- 20 -

6.      **Spread of Hours**

Plaintiff seeks recovery pursuant to section 146-1.6 of the New York State Department of Labor ("NYSDOL") regulations, applicable to restaurant workers, which provides for compensation of one hour's pay at the basic minimum hourly wage rate for each day that he worked more than ten hours, "regardless of a given employee's regular rate of pay." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(a), (d). Unlike the generally applicable spread-of-hours provision, this regulation is not limited to employees earning minimum wage. See Flores v. Anjost Corp., 284 F.R.D. 112, 118-19 (S.D.N.Y. 2012); cf. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; Chowdhury v. Hamza Exp. Food Corp., No. 14-CV-150 (JBW), 2015 WL 5541767, at *6 (E.D.N.Y. Aug. 21, 2015), adopted, 2015 WL 5559873 (E.D.N.Y. Sept. 17, 2015), aff'd, 666 F.App'x 59 (2d Cir. 2016); Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, No. 12-CV-5737 (ILG)(JMA), 2014 WL 4954629, at *12-13 (E.D.N.Y. Oct. 2, 2014).

Plaintiff has alleged that he "worked seven days per week, from seven (7) to thirteen (13) hours per day," but that defendants did not pay a "'spread-of-hours' premium for every day in which [he] worked over 10 hours." See Am. Compl. ¶¶ 31, 45. Plaintiff has sufficiently alleged a claim for unpaid spread-of-hours pay for any days that he worked in excess of ten hours. Nevertheless, the question remains whether section 146-1.6, which applies to restaurant workers regardless of their regular rate of pay, should govern plaintiff's entire period of employment, or whether the more generally applicable spread-of-hours provision -- which affords relief only to employees earning no more than minimum wage --

- 21 -

should apply to the time plaintiff spent primarily renovating the premises to prepare for the reopening of the business. Plaintiff ignores this distinction, merely assuming, without more, that section 146-1.6 governs all the pay periods in question. The Court's research has uncovered no authority addressing this issue.

Having considered the matter, this Court concludes that section 146-1.6 should apply only to the workweeks when plaintiff was in fact functioning as a restaurant worker, starting with the reopening of the restaurant and bar. Prior to that time, plaintiff was operating in a capacity more akin to that of a day laborer performing construction work. For that first phase of the work, section 142-2.4 should apply, with plaintiff recovering spread-of-hours pay only for those days in which he was earning minimum wage or less. Cf. Drozd v. Vlaval Constr., Inc., No. 09 CV 5122 (SJ), 2011 WL 9192036, at *16-17 (E.D.N.Y. Oct. 18, 2011) (applying section 142-2.4 to construction workers), adopted, 2012 WL 4815639 (E.D.N.Y. Oct. 10, 2012).

According to the Amended Complaint and plaintiff's declaration, plaintiff worked as a chef for three weeks after the reopening of the establishment. See Am. Compl. ¶ 30; Calle Decl. ¶ 15; but see Tr. at 38 (plaintiff estimated that he worked as a cook for "a few days before I left"); Supp. Calle Decl. ¶ 6 (claiming that he worked as a chef "for approximately five weeks, until when I was let go in March 19, 2015"). The Court's calculations assume that plaintiff's final three weeks of work were as a chef in the restaurant.

### 7. Wage Theft Prevention Act

The Amended Complaint sufficiently alleges that defendants failed to provide the wage

- 22 -

notice and statements required by sections 195(1) and 195(3) of the NYLL.[14]   See Am.
Compl. ¶¶ 47, 91, 95; see also supra p. 3.

### 8.   Unlawful Deductions

Plaintiff alleges that defendants' failure to reimburse him for expenses he was required
to incur in revising the restaurant's systems, purchasing supplies and groceries and printing
menus violated section 193 of the NYLL.   See Am. Compl. ¶¶ 98-100.   However, section
193 is inapplicable here because defendants are not alleged to have deducted any amount of
plaintiff's wages, either directly or indirectly.   See Angello v. Labor Ready, Inc., 7 N.Y.3d
579, 584-85 (2006).   Section 193 was intended to prohibit an employer's unauthorized
deduction from wages and place the risk of loss for damaged or spoiled merchandise on the
employer rather than the employee.   See Hudacs v. Frito-Lay, Inc., 90 N.Y.2d 342, 349
(1997).   On the other hand, under section 198-b of the NYLL, an employer may not require
an employee to bear an expense that is primarily for the employer's benefit.   See Salazar-
Martinez v. Fowler Bros., Inc., 781 F.Supp.2d 183, 197 (W.D.N.Y. 2011); Lin v. Hayashi
Ya II, No. 08 Civ. 6071 (SAS)(AJP), 2009 WL 289653, at *5 (S.D.N.Y. Jan. 30, 2009),
adopted, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009).   Plaintiff alleges that he was required
to advance funds to purchase certain items for the defendants and was never reimbursed.
Those allegations are sufficient to establish a claim for reimbursement under NYLL § 198-b.[15]

---

[14] Even where an employee is not paid his wages at all, the employer is liable for failure to
provide wage statements.   See Villar, 2017 WL 1333582, at *6, *8-9; cf. Cooper v. Cavalry
Staffing, LLC, 132 F.Supp.3d 460, 467-68 (E.D.N.Y. 2015) (assessing damages for failure to
provide wage statements where furnished wage statements omitted off-the-clock hours).

[15] Although plaintiff did not cite section 198-b in the Amended Complaint, the failure to cite the

9.      **Loans to Defendants**

Alleging that he loaned defendants $20,000, plaintiff seeks repayment under theories of fraud, breach of contract, quantum meruit and unjust enrichment, as pled in Counts X, XI, XII and XIII of the Amended Complaint.  See Am. Compl. ¶¶ 108-111, 113-117, 119-122, 124-126.

Under New York law, a valid breach of contract claim "'requires proof of (1) a contract, (2) performance of the contract by one party, (3) breach by the other party and (4) damages.'"  Sigala v. Spikouris, No. 00-cv-0983 (SLT)(MDG), 2014 WL 294155, at *5 (E.D.N.Y. Jan. 24, 2014) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)).  Plaintiff has adequately alleged an agreement with defendants to loan them money that they would repay by July 2015, with interest.  See Am. Compl. ¶ 113.  Plaintiff further alleges that defendants breached that agreement by failing to repay the loan.  See id. ¶ 115.  Although one could reasonably infer from the surrounding circumstances that the transfer of funds from plaintiff to defendants was an investment rather than a loan, plaintiff's allegations are deemed admitted by defendants' default.  Even in the absence of corroborating documentary evidence, this Court concludes that plaintiff has stated a claim for breach of contract in Count XI.  See Silge v. Merz, No. 05 Civ. 3648 (GBD)(AJP), 2005 WL 2387482, at *2 (S.D.N.Y. Sept. 29, 2005) (recommending default judgment for unpaid loan based on complaint's allegations and plaintiff's affidavit), adopted, 2006 WL 39632 (S.D.N.Y. Jan. 6,

_____

relevant statutory provision does not preclude recovery.  See Townsend v. Benjamin Entrs., 679 F.3d 41, 57 (2d Cir. 2012) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim.") (internal quotation marks omitted).

2006), aff'd, 510 F.3d 157 (2d Cir. 2007).

Plaintiff's alternative claims to recover the defaulted loans are duplicative of the breach of contract claim.   See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit . . . if the parties have a valid enforceable contract that governs the same subject matter as the quantum meruit claim"); see id. ("we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim"); Telecon Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) ("simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim").   Thus, the Court recommends dismissing Counts X, XII and XIII as duplicative of Count XI.

## III.   Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiffs' Amended Complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.   See supra pp. 11-12.   Instead, the Court must undertake an inquiry to determine the extent of damages to a "reasonable certainty," see Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40, as well as plaintiff's testimony.

Under both the FLSA and the NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."   Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)

(citing Wicaksono v. XYZ 48 Corp., No. 10-cv-3635 (LAK) (JCF), 2011 WL 2022644, at *2 (S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)).   Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'"   Rodriguez, 2011 WL 4962397, at *2 (quoting Rivera v. Ndola Pharm. Corp., 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007)); see Vilchis, 2016 WL 6106478, at *5.   Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate.   See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

### A.   Wage and Hour Claims

Before determining the damages to recommend for the wage-and-hour claims asserted, the Court must address threshold issues concerning the number of hours plaintiff worked per week, plaintiff's hourly rate of pay and the number of weeks plaintiff worked.

#### 1.   Hours Worked Per Week

Although the Amended Complaint and plaintiff's initial declaration proffered only an estimate of the number of hours plaintiff worked each week, see Am. Compl. ¶ 31; Calle Decl. ¶ 3, plaintiff offered into evidence calendars reflecting what plaintiff claims are his contemporaneous notes of the hours he worked each day, see Exs. A1, A2; Tr. at 5-10, 48-49. The Court will utilize the number of hours worked as reflected in the calendars admitted into evidence.

#### 2.   Regular Hourly Rate of Pay

Plaintiff testified that he and defendant Rodriguez agreed that defendants would pay

plaintiff $100 per day until the restaurant became successful, and then defendants would increase plaintiff's salary.   See Tr. at 16-17; see also id. at 34; Calle Decl. ¶ 4; Supp. Calle Decl. ¶ 5; Am. Compl. ¶ 32.

For purposes of the FLSA, when an employee is paid a flat sum for a day's work, "his regular rate is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked."   29 C.F.R. § 778.112; see Charvac v. M & T Project Managers of N.Y., Inc., No. 12-CV-5637 (CBA)(RER), 2015 WL 5475531, at *5-6 (E.D.N.Y. June 17, 2015) (applying 29 C.F.R. § 778.112 to determine the regular hourly rate of a construction worker who was paid $100 per day), modified in limited part, on other grounds, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015).   With one exception, noted below, New York law provides for the same formula for employees who are not paid on an hourly basis.   See N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16; see also Espinoza v. Indus. Glass & Mirror Inc., No. 16-cv-0064 (ARR)(RER), 2016 WL 7650592, at *5 (E.D.N.Y. Nov. 30, 2016).   Ignoring these regulations, plaintiff calculates his hourly rate based on a forty-hour workweek rather than the "total hours actually worked."   See DE #31-2.   Obviously, this method results in a significantly higher hourly rate to be applied in calculating overtime wages.   Plaintiff cites no authority in support of his approach.

To be sure, a NYLL regulation now provides that a restaurant employee's regular hourly rate is determined by dividing the employees' weekly earnings by the lesser of forty hours or the hours actually worked.   See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5. However, plaintiff has not cited that regulation and, in any event, plaintiff functioned as a restaurant worker (as opposed to a construction worker) for only three weeks of his period of

employment.  See *supra* pp. 3, 21-22.  Therefore, the Court will apply section 146-3.5 to only the last three of plaintiff's workweeks.  For the first phase of plaintiff's employment, the Court will apply section 142-2.16, and will consider whether the parties contemplated that plaintiff's weekly earnings would be based on a forty-hour workweek.

Generally, the determination of the regular rate of pay "must be drawn from what happens under the employment contract."  29 C.F.R. § 778.108.  "In the absence of any written instrument memorializing the parties' intentions, the Court must infer the terms of their agreement from the entire course of their conduct, based on the testimonial and documentary evidence in the record."  Moon, 248 F.Supp.2d at 206.  According to plaintiff's records, he worked more than forty hours every week that he worked for defendants.  While he and Rodriguez did not discuss in advance how many hours plaintiff was expected to work per day, see Tr. at 46, Rodriguez made clear that she wanted the renovation of the premises to be completed "as soon as possible," id.; see id. at 17, and that plaintiff would be working long hours, see id. at 47.  Plaintiff's testimony suggests that, at a minimum, he expected to work at least eight hours per day, possibly seven days per week, or far more than a 40-hour workweek.  See id. at 46-47.

Accordingly, it would be unreasonable to infer that the parties intended that plaintiff's daily rate covered only a 40-hour week.  See Peralta, 2014 WL 988835, at *8 (calculating plaintiff's regular hourly rate based on a 56-hour workweek because plaintiff regularly worked 56 hours per week); Man Wei Shiu v. New Peking Taste Inc., No. 11–CV–1175 (NGG)(RLM), 2014 WL 652355, at *12 (E.D.N.Y. Feb. 19, 2014) (calculating plaintiffs' regular hourly rate based on a 67-hour workweek and rejecting plaintiff's calculations based on

a 40-hour workweek).   Absent some evidence that the parties agreed that plaintiff's daily rate

was intended to cover only forty hours per week, the Court declines to adopt plaintiff's method

of calculation.   See Espinoza, 2016 WL 7650592, at *5 (calculating hourly rate based on

hours actually worked for plaintiff who was paid a day rate); Chen v. JP Standard Constr.

Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *9, 10 (E.D.N.Y. Mar. 18, 2016)

(same), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016); Charvac, 2015 WL 5475531,

at *5-6 (same).

Thus, for all but the last three weeks of plaintiff's employment, the Court calculates

plaintiff's regular hourly rate for each week by multiplying the number of days worked in a

given week, as reflected in the calendars submitted, by the daily rate of $100, and dividing the

weekly pay by the number of hours actually worked that week, as derived from the

calendars.[16]   For the last three weeks, when plaintiff was functioning as a restaurant worker,

the Court calculates plaintiff's regular hourly rate for each week by multiplying the number of

days worked in a given week by the daily rate of $100, and dividing the weekly pay by forty

hours, which is less than the number of hours actually worked.

### 3.   Unpaid Wages

As discussed above, although the FLSA provides for recovery of unpaid "straight time"

wages only up to the minimum wage, plaintiff is entitled to recover all agreed-upon wages

---

[16] For example, for the week of December 14, 2014 through December 20, 2014, the calendar indicates that plaintiff worked four days.   At a rate of $100 per day, plaintiff should have received $400 that week.   During that week, plaintiff worked a total of 49 hours.   Therefore, for that week, plaintiff's regular hourly rate is $8.16 ($400 divided by 49 hours).   See infra p. 30.

under the NYLL.[17]   Plaintiff was promised $100 per day but the number of hours he worked

varied daily.   Therefore, plaintiff's hourly rate of pay changed each week based on the

number of hours and days that he worked.   For some weeks, that hourly wage fell below the

minimum wage.[18]   Accordingly, the Court calculates plaintiff's unpaid wages based on the

minimum wage rate for certain weeks and based on the agreed-upon wage for other weeks,

whichever is higher, as set forth in the chart below:

| Date | Daily Rate | No. of Days Worked | No. of Hours Worked per Week | Weekly Agreed Upon Wages | Actual Hourly Rate | Min. Wage Rate | Unpaid Wages |
|------|-----------|--------------------|------------------------------|--------------------------|--------------------|----------------|--------------|
| 12/14/14-12/20/14 | $100.00 | 4 | 49 | $400.00 | $8.16 | $8.00 | $400.00 |
| 12/21/14-12/27/14 | $100.00 | 7 | 87 | $700.00 | $8.05 | $8.00 | $ 700.00 |
| 12/28/14-1/3/15 | $100.00 | 7 | 84 | $700.00 | $8.33 | $8.75[19] | $ 735.00 |
| 1/4/15-1/10/15 | $100.00 | 7 | 83 | $700.00 | $8.43 | $8.75 | $ 726.25 |
| 1/11/15-1/17/15 | $100.00 | 7 | 72 | $700.00 | $9.72 | $8.75 | $ 700.00 |
| 1/18/15-1/24/15 | $100.00 | 7 | 82 | $700.00 | $8.54 | $8.75 | $ 717.50 |
| 1/25/15-1/31/15 | $100.00 | 7 | 86 | $700.00 | $8.14 | $8.75 | $ 752.50 |

[17] "'[A] plaintiff may recover under whatever statute provides the highest measure of damages.'"   Villar, 2017 WL 1333582, at *3 (quoting Wicaksono, 2011 WL 2022644, at *3).

[18] The federal minimum wage rate was $7.25 during all relevant periods, see 29 U.S.C. § 206(a)(1), and the New York minimum wage was $8.00 per hour until it increased to $8.75 effective December 31, 2014, see N.Y. Lab. Law § 652(1).   The Court applies the higher New York rate.   See 29 U.S.C. § 218(a).

[19] Since this week spanned the change in the New York minimum wage rate from $8.00 to $8.75, the Court applies the minimum wage rate in effect at the end of the week.

| Date | Daily Rate | No. of Days Worked | No. of Hours Worked per Week | Weekly Agreed Upon Wages | Actual Hourly Rate | Min. Wage Rate | Unpaid Wages |
|---|---|---|---|---|---|---|---|
| 2/1/15-2/7/15 | $100.00 | 7 | 85 | $700.00 | $8.24 | $8.75 | $ 743.75 |
| 2/8/15-2/14/15 | $100.00 | 7 | 92 | $700.00 | $7.61 | $8.75 | $ 805.00 |
| 2/15/15-2/21/15 | $100.00 | 7 | 70 | $700.00 | $10.00 | $8.75 | $ 700.00 |
| 2/22/15-2/28/15 | $100.00 | 7 | 80 | $700.00 | $8.75 | $8.75 | $ 700.00 |
| 3/1/15-3/7/15 | $100.00 | 7 | 60 | $700.00 | $17.50 | $8.75 | $ 700.00 |
| 3/8/15-3/14/15 | $100.00 | 7 | 61 | $700.00 | $17.50 | $8.75 | $ 700.00 |
| 3/15/15-3/19/15 | $100.00 | 5 | 47 | $500.00 | $12.50 | $8.75 | $ 500.00 |
| **TOTAL** | | | | | | | **$9,580.00** |

In sum, this Court recommends awarding plaintiff $9,580 in unpaid wages.

**4.      Overtime Compensation**

For the time period in which plaintiff performed renovations, plaintiff's damages for unpaid overtime are calculated by taking the higher of his regular hourly rate or the minimum wage and multiplying that rate by one-half to determine the overtime premium.   For the time period in which plaintiff worked as a cook, plaintiff's overtime damages are calculated by taking his regular hourly rate, based on an assumed 40-hour workweek as per section 146-1.6, and multiplying that rate by one-and-one-half.   The Court then multiplies the applicable overtime rate for a particular week by the number of hours in excess of forty that plaintiff worked that week.   Based on these calculations, the Court recommends that plaintiff be awarded unpaid overtime premiums as set forth in the chart below, for a total award of

$3,105.71 in unpaid overtime wages:

| Dates | Applicable Hourly Rate | Overtime Rate | Overtime Hours | Overtime Wages Owed |
|---|---|---|---|---|
| 12/14/14-12/20/14 | $8.16 | $4.08 | 9 | $36.72 |
| 12/21/14-12/27/14 | $8.05 | $4.03 | 47 | $189.41 |
| 12/28/14-1/3/15 | $8.75 | $4.38 | 44 | $192.72 |
| 1/4/15-1/10/15 | $8.75 | $4.38 | 43 | $188.34 |
| 1/11/15-1/17/15 | $9.72 | $4.86 | 32 | $155.52 |
| 1/18/15-1/24/15 | $8.75 | $4.38 | 42 | $183.96 |
| 1/25/15-1/31/15 | $8.75 | $4.38 | 46 | $201.48 |
| 2/1/15-2/7/15 | $8.75 | $4.38 | 45 | $197.10 |
| 2/8/15-2/14/15 | $8.75 | $4.38 | 52 | $227.76 |
| 2/15/15-2/21/15 | $10.00 | $5.00 | 30 | $150.00 |
| 2/22/15-2/28/15 | $8.75 | $4.38 | 40 | $175.20 |
| 3/1/15-3/7/15 | $17.50 | $26.25 | 20 | $525.00 |
| 3/8/15-3/14/15 | $17.50 | $26.25 | 21 | $551.25 |
| 3/15/15-3/21/15 | $12.50 | $18.75 | 7 | $131.25 |
| **TOTAL** | | | | **$3,105.71** |

### 5.      Spread of Hours

Plaintiff's calculations erroneously assume that plaintiff is entitled to spread-of-hours compensation for each day, including those in which he worked ten or fewer hours.   See, e.g., DE #31-2 at 2 (Dec. 28, 2014 - Jan. 3, 2015); id. at 4 (Jan. 11, 2015 – Jan. 17, 2015 and Jan. 18, 2015 - Jan. 24, 2015); id. at 5 (Jan. 25, 2015 - Jan. 31, 2015).   Based on plaintiff's records, during the weeks in which plaintiff was renovating the premises, he worked in excess of ten hours on 38 days on which he was earning no more than the minimum wage.   See supra pp. 21-22 (applying section 142-2.4 to that period of employment).   Plaintiff did not work in excess of ten hours during the three weeks he worked as a cook.   Of the 38 days for which spread-of-hours pay is due, two of them predated December 31, 2014, when the New York minimum wage was raised from $8.00 to $8.75 per hour.   Therefore, this Court recommends awarding plaintiff $331.00 (2 days x $8.00 + 36 days x $8.75) for unpaid spread of hours.

### 6.      Liquidated Damages

Plaintiff requests liquidated damages under both the FLSA and the NYLL.   See DE #31-2.

Under the FLSA, an employer who violates the overtime compensation or minimum wage requirements is liable for "an additional equal amount as liquidated damages," unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.   See 29 U.S.C. §§ 216(b), 260.   As a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.   See Peralta, 2014 WL 988835, at *10.   Therefore, plaintiff is entitled to an award of liquidated damages under the FLSA.

- 33 -

The current version of the NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."   N.Y. Lab. Law § 663(1). Liquidated damages under the NYLL are calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.   See id.

Following a split among the district courts within this Circuit (and indeed within this District), the Second Circuit sustained a lower court's denial of cumulative liquidated damages, interpreting "the New York statute's provision for liquidated damages as satisfied by a similar award of liquidated damages under the federal statute."   Chowdhury, 666 F.App'x at 60; see Tan v. Voyage Express Inc., No. 15 CV 6202 (RJD)(RML), 2017 WL 2334969, at *7 (E.D.N.Y. May 25, 2017) (recognizing that Chowdhury "aligns with the 'emerging trend' in the Eastern District" rejecting double liquidated damages).   Thus, courts should allow a single award of liquidated damages, under the statute that provides the plaintiffs with the greatest recovery.   See Leon v. Chen, No. 16-CV-480 (KAM)(PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017).

As discussed above, since damages for withheld wages under the FLSA are recoverable only up to the minimum wage, the Court recommends awarding liquidated damages under the NYLL.   Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiff $9,580 in liquidated damages for withheld wages under the NYLL.   See Gonzales v. Gan Israel Pre-School, No. 12-CV-6304 (MKB), 2014 WL 1011070, at *1, *14 (E.D.N.Y. Mar. 14, 2014) (adopting magistrate judge's recommendation that liquidated damages be awarded for violations of section 191 of the NYLL); see also N.Y. Lab. Law

- 34 -

§ 198.   Under the NYLL, plaintiff is entitled to liquidated damages on unpaid overtime compensation totaling $3,105.71.   Finally, plaintiff is entitled to liquidated damages on $331.00 in spread-of-hours compensation.   See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 48 (E.D.N.Y. 2015) (awarding liquidated damages for unpaid spread of hours); Galeana v. Lemongrass on Broadway Corp., 120 F.Supp.3d 306, 319 (S.D.N.Y. 2014).   In sum, the Court recommends awarding plaintiff $13,016.71 in NYLL liquidated damages.

### 7.      Statutory Damages Under the WTPA

Pursuant to the version of section 198(1-b) of the NYLL in effect at the time plaintiff began working for defendants, an employee who was not provided with notice in accordance with section 195(1) of the NYLL, within ten days of his or her first day of employment, see discussion *supra* p. 17, could recover damages of $50 for each week in which the violation occurred, up to a statutory maximum of $2,500.   See N.Y. Lab. Law § 198(1-b) (amended 2014).   Effective February 27, 2015, those amounts increased to $50 per day, up to a maximum of $5,000.   See N.Y. Lab. Law § 198(1-b).   Up until February 27, 2015, section 198(1-d) of the NYLL provided that, with respect to regular wage statements required pursuant to section 195(3), an employee could recover $100 for each week that defendants violated that provision, up to a maximum of $2,500.   See N.Y. Lab. Law § 198(1-d) (amended 2014). Effective February 27, 2015, those amounts increased to $250 per day up to a maximum of $5,000.   See N.Y. Lab. Law § 198(1-d).

Plaintiff never received a proper wage notice or statements.   As plaintiff worked for approximately eleven weeks prior to February 27, 2015 and 19 days following February 27,

2015, he is entitled to recover $1,500 (11 weeks x $50 + 19 days x $50) for violations of

section 195(1).   For violations of section 195(3), plaintiff is entitled to the $5,000 statutory

maximum (11 weeks x $100 + 19 days x $250 = $5,850).   Therefore, the Court recommends

that the District Court award plaintiff a total of $6,500 for defendants' violations of the WTPA

notice and statement requirements.

### B.   Unreimbursed Expenses

As discussed above, plaintiff has established defendants' liability for failing to

reimburse him for expenses he incurred for defendants' benefit.   Plaintiff claims that he spent

$3,000 designing the restaurant's business system, $660 for new menus and $675.48 for

supplies and groceries.   See Tr. at 36, 38-39.

Plaintiff has submitted a receipt for $660 for printing menus, which corroborates his

testimony.   See Ex. D-1, D-2; Tr. at 39.   However, plaintiff did not submit any documentary

evidence to support his claim that he spent $3,000 on revising plaintiff's systems.   See Tr. at

34-36.   Nor did plaintiff explain in his testimony how he spent that money.   He submitted a

binder of handwritten notes containing, *inter alia*, lists of recipes, suppliers, a sample

inventory list and sample sales reports.   See Ex. E.   It is not clear to the Court how plaintiff

spent $3,000 creating these handwritten notes.   Thus, this Court recommends denying

plaintiff's claim for that amount.

Although plaintiff testified that he spent $675.48 for supplies and groceries, he

submitted receipts totaling only $572.99.   See Ex. D1, DE #28-11 at 8-18.   Of those receipts,

five of them, reflecting purchases totaling $35.40, postdate the end of plaintiff's employment

on March 19, 2017, at which point he no longer had any reason to purchase goods for the

- 36 -

restaurant.   Most of these receipts were from Finefare Supermarket, a business from which

plaintiff also purchased goods earlier in his employment term.   However, as plaintiff testified

that he resided in the neighborhood where the restaurant bar was located, see Tr. at 13, it is

reasonable to infer that he shopped at the same market for his own grocery needs.   Plaintiff

should not be awarded amounts associated with purchases occurring after March 19, 2017.

Therefore, The Court recommends awarding plaintiff damages in the amount of

$537.59 for supplies and $660 for printing menus, for a total of $1,197.59.

### C.    Loans

Plaintiff testified that he made loans to defendants in four installments of $5,000,

partially by check and partially in cash, for a total of $20,000.   See Tr. at 20-23, 25-26.

Plaintiff submitted copies of one of the checks that he claims he had endorsed over to

defendant Rodriguez and payment stubs from his former employer reflecting payments in the

amount plaintiff claims he paid to Rodriguez by check.   See id. at 20-21; Ex. B.   Plaintiff's

handwritten notes reflect his payments to Rodriguez by checks dated January 6, 2015,

February 12, 2015, March 1, 2015 and April 2, 2015, aggregating $16,313.75, plus a total of

$3,686.25 in cash.   See Ex. B; Tr. at 21, 25-27.   Unfortunately, plaintiff did not submit any

bank records to corroborate these payments to Rodriguez, despite the Court's request for such

documents, see Tr. at 29, and subpoenas served on two banks yielded no responsive records,

see DE #41, #42.

Importantly, the date of the last payment, April 2, 2015, postdates plaintiff's last day of

work, according to his testimony.   It is unlikely that plaintiff would have loaned defendants

$5,000 after he was terminated and denied payment of his wages.   In fact, plaintiff specifically

testified that he did not make any loans to defendants after he stopped working for them. See Tr. at 33. Plaintiff could not have made the last loan payment before April 2, 2015 because that is the date reflected on his paystub from his prior employer. To resolve the discrepancies in plaintiff's testimony, the Court finds that plaintiff was mistaken as to the number of payments he made to Rodriguez, and that only three payments –- all predating March 19, 2015 –- were made. Therefore, the Court recommends awarding plaintiff a total of $15,000 for three loan payments he made to defendants. Cf. Silge, 2005 WL 2387482, at *2 (recommending award of damages for unpaid loan based solely on plaintiff's affidavit).

**D.    Summary of Damages**

| | |
|---|---|
| Overtime - NYLL | $3,105.71 |
| Unpaid Wages - NYLL | $9,580.00 |
| Spread of Hours - NYLL | $331.00 |
| Liquidated Damages - NYLL | $13,016.71 |
| WTPA Statutory Damages | $6,500.00 |
| Unreimbursed Expenses | $1,197.59 |
| Unpaid Loans | $15,000.00 |
| **TOTAL** | $48,731.01 |

E.    **Prejudgment Interest**

1.    **Wage Claims**

Pursuant to the New York Civil Practice Law and Rules ("CPLR"), plaintiff requests prejudgment interest on unpaid wages, overtime wages and spread of hours.[20]   See DE #31-2 at 10.   While plaintiff would not be entitled to prejudgment interest under the FLSA,[21] courts have held that plaintiffs are entitled to recover prejudgment interest at a rate of nine percent per year on their compensatory damages under the NYLL, see N.Y. C.P.L.R. §§ 5001, 5004; Bendo, 2017 WL 4179854, at *6:   "Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents" and thus may both be awarded for violations of state wage laws, see Reilly v. Natwest Mkts. Grp., 181 F.3d 253, 265 (2d Cir. 1999); but cf. Chowdhury, 666 F.App'x at 61 (finding that liquidated damages provisions under the FLSA and NYLL "serve the same functions").   Courts have further held that prejudgment interest may be awarded under the NYLL "'even where liability is found not only under the NYLL, but also under the FLSA.'"   Bendo, 2017 WL 4179854, at *6 (quoting Begum v. Ariba Discount, Inc., No. 12cv6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)); see

---

[20] In plaintiff's counsel's declaration, he omits the request for prejudgment interest on unpaid spread of hours.   See Declaration of Paul Mendez (May 23, 2017) ("Mendez Decl.") ¶ 30, DE #28-3.

[21] See, e.g., Thomas v. iStar Fin., Inc., 652 F.3d 141, 150 n.7 (2d Cir. 2011); Bendo v. Bautista, No. 12-CV-5367 (DRH)(AYS), 2017 WL 4179854, at *5 (E.D.N.Y. Aug. 30, 2017), adopted, 2017 WL 4217118 (E.D.N.Y. Sept. 20, 2017).   The rationale is that liquidated damages awarded under the FLSA are designed to compensate employees for delays in payment, and that such damages are thus the functional equivalent of prejudgment interest. See Zhang, 2016 WL 4124304, at *5.

Khurana, v. JMP USA, Inc., 14-CV-4448 (SIL), 2017 WL 1251102, at *17 & n.4 (E.D.N.Y. Apr. 5, 2017) (awarding prejudgment interest on the same amount as "awarded under the FLSA because the equivalent compensatory award is available under the NYLL for the same time period"); Fermin, 93 F.Supp.3d at 48-49; Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *9 (S.D.N.Y. May 8, 2007).

Consequently, this Court recommends that plaintiff be awarded prejudgment interest on his withheld wages, overtime wages and spread-of-hours damages, totaling $13,016.71.[22]   An award of prejudgment interest is governed by Sections 5001 and 5004 of the CPLR, and where, as here, "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."   N.Y. C.P.L.R. § 5001(b).   The date from which to compute prejudgment interest is left to the discretion of the court.   See Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994); Gunawan, 897 F.Supp.2d at 93 (citing Koylum, Inc. v. Peksen Realty Corp., 357 F.Supp.2d 593, 597 (E.D.N.Y. 2005)) ("A court has discretion to choose a reasonable accrual date.").

Plaintiff proposes January 31, 2015 as the prejudgment interest accrual date, describing

---

[22] In accordance with the relevant case law, plaintiff does not seek prejudgment interest on his NYLL liquidated damages or his WTPA statutory damages.   See Guaman v. Krill Contracting, Inc., No. 14-CV-4242 (FB)(RER), 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015) (no prejudgment interest on amounts awarded under the WTPA); Apolinar v. Global Deli & Grocery, Inc., No. 12 CV 3446 (RJD)(VMS), 2013 WL 5408122, at *12 (E.D.N.Y. Sept. 25, 2013) ("Prejudgment interest is calculated, however, on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law.") (internal quotation and citations omitted).

- 40 -

it as the "midpoint" between plaintiff's start date of December 14, 2014 and the end date of

March 19, 2015.   See DE #31-2 at 10.   The Court, in exercising its discretion, recommends

adopting plaintiff's proposed interest accrual date since it is the midpoint between December

17, 2014 and March 19, 2015, the start and end dates of plaintiff's employment according to

plaintiff's testimony and contemporaneous notes.   See Liu v. Jen Chu Fashion Corp., No. 00

Civ. 4221 (RJH)(AJP), 2004 WL 33412, at *5 (S.D.N.Y. 2004) (adopting counsel's "midpoint

of the accrual of damages" date).   Therefore, the Court recommends granting plaintiff

prejudgment interest on his wage claims, calculated at a daily rate of $3.21 ($13,016.71 x 9%

÷ 365 days) from January 31, 2015 through the entry of judgment.

### 2.      Unpaid Loans

Plaintiff also seeks an award of interest on the outstanding loan principal.   See Mendez

Decl. ¶ 33.   Under section 5001 of the CPLR, an award of prejudgment interest for a breach

of contract claim is mandatory.   See Nature's Plus Nordic A/S v. Natural Organics, Inc., 108

F.Supp.3d 52, 55-56 (E.D.N.Y. 2015), aff'd, 646 F.App'x 25 (2d Cir. 2016).   Applying the

statutory interest rate of 9 percent, plaintiff is owed interest at the daily rate of $3.70 ($15,000

x 9% ÷ 365 days) from July 15, 2015[23]  through the entry of judgment.

### F.      Attorney's Fees

### 1.      Applicable Legal Standard

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of

---

[23] Without any explanation, plaintiff calculates interest from May 2, 2015.   Yet, plaintiff's
supplemental declaration states that his agreement with Rodriguez provided that she would
repay the loan by July 15, 2015.   See Supp. Calle Decl. ¶ 16.

"reasonable" attorney's fees.   See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).   Plaintiff

bears the burden of proving the reasonableness of the fees sought.   See Savoie v. Merchs.

Bank, 166 F.3d 456, 463 (2d Cir. 1999).   In considering an application for attorney's fees,

the Court must first determine the presumptively reasonable fee.   See Arbor Hill Concerned

Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).   This

presumptively reasonable fee - or lodestar[24]- is essentially "what a reasonable, paying client

would be willing to pay, given that such a party wishes to spend the minimum necessary to

litigate the case effectively."   Simmons v. New York City Transit Auth., 575 F.3d 170, 174

(2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (internal quotations omitted).

        Courts can and should exercise broad discretion in determining a reasonable fee award.

See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in

making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's

"considerable discretion").   The method for determining reasonable attorney's fees in this

Circuit is based on a number of factors, such as the labor and skill required, the difficulty of

the issues, the attorney's customary hourly rate, the experience, reputation and ability of the

attorney, and awards in similar cases.   See Arbor Hill, 522 F.3d at 186 n.3, 190.   In

particular, when assessing an attorney's requested hourly rate, courts typically consider other

rates awarded in the district in which the reviewing court sits.   This is known as the "forum

---

[24]   The lodestar is the product of the number of hours reasonably expended on the litigation
and a reasonable hourly rate.   See Arbor Hill, 522 F.3d at 183 ("The fee - historically known
as the 'lodestar'- to which [ ] attorneys are presumptively entitled is the product of hours
worked and an hourly rate.").

- 42 -

rule."   See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also

Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in

most cases hire counsel from within his district, or at least counsel whose rates are consistent

with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the

number of hours reasonably expended, in order to determine the presumptively reasonable fee.

See Arbor Hill, 522 F.3d at 190.   With very limited exceptions, "contemporaneous time

records are a prerequisite for attorney's fees in this Circuit."   N.Y. State Ass'n for Retarded

Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).   The Court must review these

time records and the hours an attorney billed in order to determine the reasonableness of such

and, in doing so, should examine the value of the work product and "exclude excessive,

redundant or otherwise unnecessary hours."   Concrete Flotation Sys., Inc. v. Tadco Constr.

Corp., No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010)

(quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009)), adopted, 2010 WL

2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany,

42 F.3d 131, 133 (2d Cir. 1994).   "[A] fee award should be based on scrutiny of the unique

circumstances of each case . . . ."   McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d

Cir. 2010) (internal quotations and citations omitted).

In this case, plaintiff seeks $8,697.50 in attorney's fees for the time incurred by two

attorneys with Hang & Associates, PLLC: principal attorney Jian Hang and associate Marisol

Santos.   See Plaintiff's Memorandum of Law (May 23, 2017) at 17-18, DE 28-2; Billing

Records (May 23, 2017), DE #28-12.

- 43 -

2.    **Reasonable Hourly Rate**

Plaintiff requests an hourly rate of $350 for Hang's services.   See Mendez Decl. ¶ 36.

Recent cases have held that reasonable hourly rates for partners in wage and hour cases in this

District typically range from $300 to $400.   See Leon, 2017 WL 1184149, at *10 (reducing

partner's rate to $350 per hour); Quiroz v. Luigi's Dolceria, Inc., No. 14-CV-871 (VVP),

2016 WL 6311868, at *4 (E.D.N.Y. Oct. 28, 2016); Fermin, 93 F.Supp.3d at 52; Hernandez

v. Prof'l Maint. & Cleaning Contractors Inc., No. 13-CV-2875 (FB)(LB), 2015 WL 128020,

at *8 (E.D.N.Y. Jan. 8, 2015).

The Court recognizes that Mr. Hang has been awarded the rate of $350 per hour in

other cases in this District.   See, e.g., Tan v. Voyage Express Inc., No. 15 CV 6202

(RJD)(RML), 2017 WL 2334969, at *9 (E.D.N.Y. May 25, 2017); Zhang v. Red Mountain

Noodle House Inc., No. 15-CV-628 (SJ)(RER), 2016 WL 4124304, at *6 (E.D.N.Y. July 5,

2016).   Hang's requested rate is, however, excessive under the circumstances of this case.

First, while Hang is the principal of his own law firm, he has less experience than some other

attorneys who have been awarded comparable rates in this District.   See Gonzalez v. Jane

Roe, Inc., No. 10 CV 1000 (NGG) (RML), 2015 WL 4662490, at *6 (E.D.N.Y. July 15,

2015) (reducing to $300 per hour rate of counsel with thirty years of experience in a "routine"

wage-and-hour action), modified on other grounds, 2015 WL 4681151 (E.D.N.Y. Aug. 6,

2015); Fermin, 93 F.Supp.3d at 51-52 (finding $350 per hour to be reasonable for an attorney

with sixteen years' experience, in a default judgment case); Acosta v. Hall of Fame Music

Stores, Inc., No. 10-CV-5139 (SLT)(LB), 2015 WL 1003550, at *8 (E.D.N.Y. Mar. 5, 2015)

(awarding $350 per hour for attorney with 24 years' experience).   Moreover, this was an

- 44 -

uncontested action with defaulting defendants, not a hotly litigated lawsuit requiring a high
level of skill; nevertheless, Hang accounts for more than 85 percent of the total hours billed to
this case, including tasks that should have been completed by an associate or paralegal at a
lower rate.   For example, Hang billed for "[f]iling complaint and arrang[ing] to serve the
complaint in the Court" and to "[r]e-arrange service on Defendants."   See Billing Records at
1 (entries for 3/1/16 and 3/20/16).   Such administrative tasks should not be billed at partner
rates.   See Ryan v. Allied Interstate, Inc., 882 F.Supp.2d 628, 635 (S.D.N.Y. 2012).

  More importantly, the Court believes that the performance exhibited by counsel
warrants a significant reduction in Hang's hourly rate.   Plaintiff's submissions contain
numerous inconsistencies that counsel made no effort to reconcile.   For example, plaintiff's
submissions vary as to the end date of his employment.   Counsel did not seek to reconcile the
discrepancies through plaintiff's testimony regarding the April 2, 2015 loan disbursement,
which occurred after plaintiff's alleged termination date.   Similarly, counsel did not address
the fact that plaintiff claims reimbursement for expenses that postdate the termination of his
employment.   Further, despite the Court's having afforded plaintiff an opportunity to submit
documentary evidence to corroborate his allegations as to the loans disbursed to defendants, he
failed to do so.

  Accordingly, the Court recommends that the award for the hours expended by Hang be
at an hourly rate at the lower end of the acceptable range, or $300 per hour.   As for associate
Marisol Sanchez, for whom plaintiff seeks $275 per hour, plaintiff has provided no
information concerning her seniority or experience in FLSA or other matters.   Without such
information, the Court is "in no position to determine whether, and to what degree, the unique

skills or experience of an attorney . . . weigh[] in favor of deviating from the norms governing reasonable rates." Gonzalez v. Scalinatella, Inc., 112 F.Supp.3d 5, 29 (S.D.N.Y. 2015). According to the Court's search of the New York State Unified Court System's Attorney Directory, Santos was admitted to the state bar in 2014. The prevailing hourly rate for junior associates in FLSA cases in this District is from $100 to $200. See Luo v. L & S Acupuncture, P.C., No. 14 Civ. 1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015); Griffin v. Astro Moving & Storage Co. Inc., No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015). In light of plaintiff's failure to provide any background information regarding Santos' experience, the Court recommends reducing Santos' hourly rate to $150 per hour.

### 3.  Reasonable Number of Hours

Counsel claims to have spent 25.1 hours on this matter. See Billing Records. While certain of the tasks reflected in the billing records should have been completed more efficiently, the request for fees encompasses only work completed through September 1, 2016, prior to the filing of plaintiff's supplemental submissions and the inquest hearing. Thus, the Court finds that plaintiff's requested hours are not unreasonable.

Applying the reduced hourly rates to the number of hours reflected in counsel's billing records, the Court recommends awarding attorney's fees in the amount of $7,155.00 (22.1 hours x $300 + 3.5 hours x $150).

### G.  Costs

Plaintiff further requests an award of $528.40 for costs incurred during the course of this litigation, including the court filing fee and service of process fees. See Mendez Decl.

¶ 45 & Ex. 10, DE #28-13.[25]   As a general matter, a prevailing plaintiff in an action under the FLSA is entitled to recover costs from the defendant.   See 29 U.S.C. § 216(b).   However, only those costs that are tied to "[i]dentifiable, out-of-pocket disbursements" are recoverable. Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., No. 13 Civ. 3061 (JGK), 2014 WL 2624759, at *8 (S.D.N.Y. 2014) (quoting Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987)).   Since the costs incurred here are routinely recoverable, the Court recommends awarding plaintiff costs in the amount requested, i.e., $528.40.

## CONCLUSION

For the reasons explained above, the Court recommends that default judgment be granted against both named defendants, jointly and severally, in the amount of $56,414.41, representing $48,731.01 in compensatory, liquidated, and statutory damages, and $7,155.00 in attorney's fees and $528.40 in costs.   In addition, the Court recommends awarding prejudgment interest, at the rate of $3.21 per day from January 31, 2015 through the entry of judgment, on $13,016.71 of plaintiff's recommended wage-claim damages, and interest at the daily rate of $3.70 from July 15, 2015 through the entry of judgment, on recommended breach-of-contract damages of $15,000.   The Court further recommends that plaintiff be directed to show good cause for failing to serve the John and Jane Doe defendants within 90 days of the filing of his initial pleading, or else seek voluntary dismissal of the claims against

---

[25] Counsel's supporting declaration states that "[t]he total amount of expenses is $528.40 including $528.40 filing fee and $128.40 process of service fee."   See Mendez Decl. ¶ 45. Of course, that statement contains an error since the court filing fee is $400.00, as evidenced by the receipt submitted by plaintiff.   See DE #28-13 at 5.   Moreover, the documents submitted by plaintiff in support of his request for costs demonstrate costs incurred in the amount of $533.40 ($55.00 + $78.40 + $400.00).   See DE #28-13.

those defendants.

Any objections to the recommendations contained herein must be filed with Judge Garaufis on or before November 13, 2017.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

**SO ORDERED.**

**Dated:    Brooklyn, New York
            October 24, 2017**

/s/ *Roanne L. Mann*

**ROANNE L. MANN
CHIEF UNITED STATES MAGISTRATE JUDGE**

- 48 -